UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:05-CR-127 |
| | ) | (VARLAN/SHIRLEY) |
| ANDRE MCGRAW, | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This criminal case is before the Court on defendant's Objections to the Report and Recommendation of August 11, 2006 [Doc. 94]. On August 11, 2006, United States Magistrate Judge C. Clifford Shirley filed a Report and Recommendation ("R&R") [Doc. 91] in which he recommended that the following motions filed by defendant be dismissed: *Pro Se* Motion to Suppress [Doc. 30]; and Motion to Suppress Evidence Obtained at Apartment 285G Morningside Apartments [Doc. 57]. The government has filed a response to defendant's objections [Doc. 95] and defendant has filed a reply [Doc. 96].

As required by 28 U.S.C. § 636(b)(1), the Court has undertaken a *de novo* review of those portions of the R&R to which defendant has objected. The Court has carefully reviewed Judge Shirley's R&R, the underlying pleadings [Docs. 30, 57, 58, 59, 60, 63, 64, 87, 89], the parties' briefs regarding the pending objections [Docs. 94, 95, 96], and the transcript of the hearing before Judge Shirley [Doc. 83]. For the reasons set forth herein, defendant's objections will be overruled.

Defendant first objects to Judge Shirley's finding that defendant stated that Officers Dururvurur and Neal, Investigator Bell, and Detective Huckelby went to the Morningside Garden Apartments and found defendant's sister, Lavern McGraw-Smith, at home. Defendant argues that in his post-hearing brief [Doc. 87], defendant "clarified that after seeing Detective Huckelby in court on June 23, 2006, the officer that [defendant] believed to be Detective Huckelby was not Detective Huckelby." [Doc. 94 at 2.] The government asserts that "[d]efendant's clarification in his brief does not change his sworn testimony to the contrary at the hearing." [Doc. 95 at 2.] Just as a party cannot create a factual issue by filing an affidavit which contradicts earlier given testimony, *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986), defendant cannot attempt to modify the testimony he gave at the hearing before Judge Shirley with a later-filed brief. Judge Shirley accurately recounted defendant's hearing testimony in the R&R. This objection is therefore overruled.

Defendant next objects to Judge Shirley's finding that the officers informed Ms. McGraw-Smith that they were investigating something that occurred outside and that they were looking for someone who may have lived with her. [Doc. 94 at 3.] The government contends that Judge Shirley accurately recounted the testimony on the matter [Doc. 95 at 3.] After carefully reviewing the relevant portions of the transcript, the Court agrees with Judge Shirley's account of the testimony of Officer Neal, in which he stated that he told Ms. McGraw-Smith that the officers "were looking for someone that may have lived with her." [Doc. 83 at 29.] Defendant's objection is therefore overruled.

Defendant next objects to Judge Shirley's finding that Officer Neal did not have trouble communicating with Ms. McGraw-Smith. [Doc. 94 at 3.] The government argues that Judge Shirley correctly recounted the testimony on the matter. [Doc. 95 at 3.] After reviewing the relevant portions of the transcript, the Court agrees with Judge Shirley's account of the testimony of Officer Neal, in which he stated, "[i]f [Ms. McGraw-Smith] had any trouble communicating, any speech disruptions or anything like that, I detected none of those." [Doc. 83 at 20.] In general, the Court notes that Judge Shirley had the opportunity to observe the witnesses, including Officer Neal, and assess their credibility and the Court will not second-guess Judge Shirley's determination as to the credibility of witnesses. Accordingly, this objection is overruled.

Defendant next objects to Judge Shirley's failure to note that Officer Neal did not record any field notes of the incident and argues that this is relevant as it "tends to diminish the officers' credibility." [Doc. 94 at 3.] The government asserts that Officer Neal's failure to record field notes was due to his being assigned as a Field Training Officer who was designated to observe other officers and not complete reports and therefore does not impact his credibility. [Doc. 95 at 4.] In the R&R, Judge Shirley noted that there was no recording of the incident in question [Doc. 91 at 6], but did not discuss the reasons for Officer Neal's failure to make a report. Upon review of the transcript, the Court notes that Officer Neal testified that he was serving as a Field Training Officer on the day of the incident and was only observing the activities of Officer Duruvurur. [Doc. 83 at 6-7, 40.] The Court therefore agrees with the government that Officer Neal's failure to record field notes does not impact

3

his credibility in any way. Finding no error in Judge Shirley's omission to discuss why Officer Neal to not record any field notes, defendant's objection is overruled.

Defendant next objects to Judge Shirley's finding that Officer Neal spoke firmly but did not yell at Ms. McGraw-Smith. [Doc. 94 at 4.] The government argues that Judge Shirley's conclusion is supported by the record [Doc. 95 at 4.] After careful review of the relevant portions of the transcript, the Court finds no error with Judge Shirley's determination that "[Officer] Neal's tone of voice was firm, but he did not yell at McGraw-Smith" in telling her that "he could put her in jail" for failing to inform the officers that defendant was in the bathroom at the time they searched her apartment. [Doc. 91 at 16.] Defendant's objection is therefore overruled.

Defendant next objects to Judge Shirley's finding that defendant did not protest the search of her apartment. [Doc. 94 at 4.] Upon review of the relevant portions of the transcript, the Court agrees with Judge Shirley's account of defendant's arrest and notes that there is no indication in the record that defendant protested the search of his sister's apartment or was removed from the apartment to be prevented from protesting the search. Instead, the transcript reflects that defendant was escorted out of the living room after telling the officers present that his sister did not know he was in the apartment because "she was asleep on the couch" when he came in. [Doc. 83 at 57.] Accordingly, defendant's objection is overruled.

Defendant next objects to Judge Shirley's determination that there was no evidence in the record suggesting that Ms. McGraw-Smith's means of entering or exiting her

4

apartment was blocked. [Doc. 94 at 5.] Careful review of the relevant portions of the transcript reveal no error in Judge Shirley's determination that "there is no evidence before the Court that the officers blocked her means of egress, either intentionally or by accident." [Doc. 91 at 25.] The defendant's objection is therefore overruled.

Defendant next objects to Judge Shirley's conclusions regarding Ms. McGraw-Smith's cognitive abilities as they pertain to her ability to consent to the search of her apartment. Specifically, defendant argues that Ms. McGraw-Smith was suffering from an impairment that impacted her communication and cognitive abilities the day of the incident [Doc. 94 at 5], that Ms. McGraw-Smith's consent to have her apartment searched for weapons after defendant's arrest was coerced [*id.* at 6], that Ms. McGraw-Smith's ability to enter into a lease agreement is irrelevant as to her competence to consent to the search [*id.*], and that Ms. McGraw-Smith's impairment resulted in her requiring constant care-taking [*id.* at 7].

As to Ms. McGraw-Smith's cognitive abilities, the government argues that defendant has presented no evidence that Ms. McGraw-Smith was suffering from a cognitive impairment at the time of the incident. [Doc. 95 at 5-6.] While a review of the transcript shows that during defendant's testimony, he discussed that his sister was "bludgeoned in the head with a blunt object" in Alabama in 1997 and that her mind "comes and goes," [Doc. 83 at 59, 62], there is no evidence in the record that Ms. McGraw-Smith was unable to understand the officers on the day in question. Accordingly, the Court finds no error with Judge Shirley's conclusion that "Ms. McGraw-Smith appeared to have no problem

5

comprehending the situation at hand" and did not have "'severely limited cognitive abilities,'" as defendant has argued. [Doc. 91 at 26.] Therefore, defendant's objection is overruled.

With regards to defendant's contention that Ms. McGraw-Smith was coerced into giving consent to have her apartment searched for weapons, the government contends there is no evidence in the record of police coercion. [Doc. 95 at 6.] A review of the transcript reveals no evidence that Ms. McGraw-Smith was coerced in any way. Therefore, the Court agrees with Judge Shirley's determination that Ms. McGraw-Smith's consent to have her apartment searched and have it searched for weapons after defendant's arrest was given freely. Defendant's objection is accordingly overruled.

As to defendant's assertion that Ms. McGraw-Smith's ability to enter into a lease agreement is irrelevant as to her competence to consent to a search, the government argues that Ms. McGraw-Smith's apparent ability to enter in to lease for her apartment "casts doubt on the validity of Defendant's argument that Ms. Smith presently suffers from some form of cognitive impairment." [Doc. 95 at 6.] The Court agrees with Judge Shirley that the fact that Ms. McGraw-Smith's name was the only name on a lease strongly suggests that she does not suffer from the kind of severe limitations defendant contends she does. Accordingly, defendant's objection is overruled.

With regards to defendant's contention that Ms. McGraw-Smith required a caretaker, the government argues that based upon the totality of the circumstances, Judge Shirley's conclusion that Ms. McGraw-Smith did not require constant care was not clearly erroneous.

[Doc. 95 at 7.] The Court has considered the facts that led Judge Shirley to conclude that Ms. McGraw-Smith did not require a caretaker, including that the apartment Ms. McGraw-Smith rented was a one-bedroom unit, that defendant only resided with Ms. McGraw-Smith for two months prior to his arrest in 2005, and that this two-month stay was the only time defendant resided with Ms. McGraw-Smith. [Doc. 91 at 26-27.] Consequently, the Court finds no error in Judge Shirley's conclusion that a preponderance of the evidence suggests that Ms. McGraw-Smith did not need a constant care-taker and defendant's objection is overruled.

Defendant next objects to Judge Shirley's finding that the officers involved in the incident spoke in conversational tones to Ms. McGraw-Smith. [Doc. 94 at 8.] The government argues that Judge Shirley's finding was in accordance with the record. [Doc. 95 at 7.] Upon careful review of the transcript, the Court notes that there is no evidence that Ms. Smith-McGraw was addressed in anything but conversational tones when the officers obtained her consent to search her apartment. Any references in the transcript to yelling involve allegations by defendant that Detective Huckleby was "hollering and screaming and threatening my sister" after finding defendant hiding in the bathroom of Ms. McGraw-Smith's apartment and that Detective Bell "got to hollering and screaming 'get him out of the apartment. Let's get him out of here'" as defendant was being escorted out of the apartment. [Doc. 83. at 57.] Accordingly, the Court finds no error with Judge Shirley's conclusion that the officers spoke in conversational tones to Ms. McGraw-Smith. [Doc. 91 at 28.]

Defendant next objects to Judge Shirley's finding that Ms. McGraw-Smith was not seized within the meaning of the Fourth Amendment. [Doc. 94 at 8.] The Court agrees with Judge Shirley's determination that there is no evidence suggesting that Ms. McGraw-Smith was seized within the meaning of the Fourth Amendment. A Fourth Amendment seizure occurs when a police officer restrains the liberty of an individual in such a way that a reasonable individual in a similar circumstance would believe that he or she is not free to leave. *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988). A seizure does not occur until the individual in question is successfully detained by physical force or a show of authority. *Ewolski v. City of Brunswick*, 287 F.3d 492, 506 (6th Cir. 2002) (citing *California v. Hodari D.*, 499 U.S. 621 (1991)). Simply because police officers were present in Ms. McGraw-Smith's apartment does not mean that she was seized. *See Ewolksi*, 187 F.3d at 507 (noting that just because the police exercised control over an individual's house did not result in all individuals within the house being seized). As the Sixth Circuit stated in *Ewolski*, "[t]he distinguishing feature of a seizure is the restraint of the subject's liberty – specifically, his or her freedom to walk away." *Id.* There is nothing in the record indicating that Ms. McGraw-Smith lacked that freedom to walk away, had she desired to do so, particularly given the fact that she allowed the police to enter her home. Therefore, defendant's objection is overruled.

Defendant next objects to Judge Shirley's determination that there was no confusion in the apartment. [Doc. 94 at 8.] Defendant argues that, based upon the totality of the circumstances, the situation in the apartment at the time of defendant's arrest was confusing

8

to someone with "Ms. McGraw-Smith's diminished mental capacity" because she did not know defendant was in her apartment at the time of the search. [Doc. 94 at 8.] The government argues that there is no evidence in the record suggesting that the circumstances in question were confusing. [Doc. 95 at 8.] At the hearing, defendant admitted that he heard Detective Bell ask Ms. McGraw-Smith "for permission to enter into the apartment to search for my person." [Doc. 83 at 54.] Thus, contrary to defendant's assertion otherwise, Ms. McGraw-Smith was aware that the police were looking for her brother because they informed her that they were. Therefore, the Court agrees with Judge Shirley's determination that Ms. McGraw-Smith "was not confused as to why the officers were there," [Doc. 91 at 29] and defendant's objection is accordingly overruled.

Defendant next objects to Judge Shirley's disagreement with defendant's assertions that Ms. McGraw-Smith witnessed defendant "succumb to overt acts and threats of force against him." [Doc. 94 at 9.] The government contends there is no evidence to support such a conclusion. [Doc. 95 at 8.] Review of the hearing transcript reveals that Ms. McGraw-Smith was in the living room of the apartment with Officer Neal when Officer Dururvurur and Detective Bell entered the bedroom of the apartment and drew their weapons, aiming them at the bathroom door. [Doc. 83 at 10.] Officer Neal testified that from the living room, he could not directly see the bathroom, but was required to "look over to the bathroom to see what [the other officers were] doing over there." [*Id.* at 27.] Furthermore, defendant testified that he does not know at what point the officers drew their guns because from his position in the bathroom, he "couldn't see outside to the front door to the living room." [Doc. 83 at

9

69.] The Court therefore agrees with Judge Shirley's conclusion that Ms. McGraw-Smith could not see the encounter between defendant and the officers. [Doc. 91 at 29.] Accordingly, defendant's objection is overruled.

Defendant next objects to Judge Shirley's determination that Ms. McGraw-Smith was not subjected to "threats of force and deprivation of liberty." [Doc. 94 at 9.] Defendant contends that because Officer Neal told Ms. McGraw-Smith that he could put her in jail for failing to tell the officers that defendant was in her home, this vitiated her ability to consent to Officer Bell's subsequent request to search her apartment for weapons. [*Id.*] The government argues that Officer Neal's comments were not coercive, particularly in light of the fact that a different officer obtained consent from Ms. McGraw-Smith after those comments were made. [Doc. 95 at 9.] As Judge Shirley correctly noted, the Sixth Circuit has held that a "defendant must show more than a subjective belief of coercion, but also some objectively improper action on the part of the police in order to invalidate consent." *U.S. v. Elkins*, 300 F.3d 638, 648 (6th Cir. 2002) (internal quotations removed). Additionally, "custody, or the threat of custody does not automatically invalidate the voluntariness of consent," nor does "fear of arrest." *U.S. v. Carr*, 2006 WL 1889284 (6th Cir. 2006). There is no evidence in the record suggesting any objectively improper action on the part of the officers, nor is there evidence suggesting that Ms. McGraw-Smith held the subjective belief that she was being coerced. Furthermore, even if it is viewed as a threat of arrest, Officer Neal's statement to Ms. McGraw-Smith that he "could put [her] in jail" for failing to tell the officers about the presence of defendant does not impair the voluntariness of her consent.

The Court therefore agrees with Judge Shirley's conclusion that Ms. McGraw-Smith was not subjected to threats of deprivation of liberty such that she was no longer able to voluntarily consent to a search. Accordingly, defendant's objection is overruled.

Defendant next objects to Judge Shirley's determination that Ms. McGraw-Smith's consent to the search of her apartment for defendant and for weapons was unequivocally given and voluntary. [Doc. 94 at 9-10.] While defendant says that he "specifically objects" to these findings, such an objection is in substance a general objection to the R&R in that it contends that defendant's two motions to suppress [Docs. 30, 57] should be granted because consent to the search of Ms. McGraw-Smith's apartment was involuntary. General objections are treated by the Sixth Circuit as having "the same effects as would a failure to object" and therefore are not preserved for appellate review. *Howard v. Sec'y of Health & Human Serv.*, 932 F.2d 505, 509 (6th Cir. 1991). As such, defendant's objections as to the voluntariness of the search are overruled.

Defendant next objects to Judge Shirley's conclusion that the government successfully proved by the preponderance of the evidence that consent to search Ms. McGraw-Smith's apartment was freely and voluntarily obtained. [Doc. 94 at 10.] Defendant argues that Judge Shirley erroneously shifted the burden of proof to defendant and did not ultimately require that the government prove voluntary consent by "clear and convincing evidence." [*Id.*] Contrary to defendant's assertion, the Supreme Court has held that "the controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence." *U.S. v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

Accordingly, Judge Shirley committed no error in finding that "the government has met its burden, by a preponderance of the evidence." [Doc. 91 at 32.] Defendant's objection is therefore overruled.

Lastly, defendant objects to Judge Shirley's recommendation that defendant's two motions to suppress [Docs. 30, 57] be denied. [Doc. 94 at 10.] Like the above objection, this is a general objection and is accordingly overruled.

For the reasons set forth herein, the Court **ACCEPTS IN WHOLE** the Report and Recommendation of Judge Shirley whereby defendant's motions to suppress [Docs. 30, 57] and are **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE